UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAN'S EXCAVATING, INC. et. al,

    Plaintiff/Counter-Defendant,

Case No. 17-12579

v.

Honorable Nancy G. Edmunds

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL NO. 324, A, B, C, D,
G, H, P, RA, S-ALF-CIO,

    Defendant/Counter-Plaintiff.

_____/

<u>OPINION AND ORDER GRANTING DEFENDANT/COUNTER-PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [11], DENYING PLAINTIFF/COUNTER-DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [13], AND DISMISSING THIRD-PARTY
DEFENDANT'S MOTION TO DISMISS [9] AS MOOT</u>

This matter is before the Court on the cross Motions for Summary Judgment filed by Plaintiff, Dan's Excavating Inc., and Defendant, International Union of Operating Engineers Local No. 324. They ask the Court to determine whether the issues contained in a grievance Local 324 filed against Dan's Excavating is arbitrable within the grievance-arbitration process under the collectively bargained agreement. The motions have been fully briefed, and the Court held a hearing on November 29, 2017. For the reasons explained below, the Defendant's motion will be GRANTED to the extent that the Court will compel arbitration and Plaintiff's motion is DISMISSED.

I.    **Background**

International Union of Operating Engineers Local 324 ("Local 324") and Michigan Infrastructure and Transportation Association ("MITA") signed a collectively bargained agreement ("Agreement" or "CBA") which became effective on March 19, 2013. Local 324

is a union which represents employees that operate heavy road construction equipment throughout Michigan. MITA is a construction trade association that represents employers in the road construction industry in Michigan. Some of those employers ("Contractors") authorized MITA to act as the collective bargaining agent in negotiations with Local 324. One such Contractor is Plaintiff, Dan Excavating, Inc. ("Plaintiff") which is a signatory under the Agreement.

Article X of the CBA contains a multi-step grievance-arbitration procedure which provides a process for Contractors, Local 324, and MITA to resolve disputes and reach a "final and binding" decision within the terms of the agreement. (Dkt. 1-2, p.20-21; PgID 27-28.) Article X also describes certain disagreements that are expressly excluded from the grievance-arbitration procedure and would require resolution outside the CBA.

On May 31, 2017, Local 324 filed Grievance No. 1362 under the CBA's Article X grievance-arbitration procedure related to the Michigan Department of Transportation's U.S.23 "Flex Route" project ("the Project")[1]. Plaintiff is the general contractor of the Project, and subcontracted a portion of the pavement cutting work to American Pavement Sawing, LLC ("American Pavement") which is not a signatory to the CBA. Local 324's grievance states in its entirety:

> [Plaintiff] is in violation of Article IX of the [CBA], "Subcontracting".
> Remedy Sought: immediately cease and desist subcontracting in violation of Article IX. Request the Union be made whole including all damages as a result of the breach of contract and failure to apply contractual terms.

---

[1] MDOT Project No. 1610020

2

Grievance No. 1362. (Dkt. 1-4, at 2; PgID 35.) Article IX of the CBA which this grievance references states in its entirety:

> Article IX - Subcontracting: The Contractor expressly agrees that in the event he subcontracts any work covered by this Agreement, to be performed on the job site, he will not so subcontract with any subcontractor unless the subcontractor agrees that in the performance of the work he will comply with all the rates, terms and conditions of this Agreement, except Article III.

CBA Article IX of the CBA. (Dkt. 1-2, at 20; PgID 27.)

Local 324 alleges Plaintiff failed to subcontract with American Pavement as required under Article IX. Plaintiff's subcontract did not ensure compliance "with all the rates, terms and conditions of [the CBA]" (CBA Article IX - Subcontracting, Dkt. 1-2, p.20; PgID 27) and as a result American Pavement did not pay their employees at rates and under terms consistent with the CBA. Plaintiff, through MITA, answered Grievance No. 1362 using the CBA's grievance-arbitration procedure. When the parties failed to reach a resolution, Local 324 submitted a request to the American Arbitration Association for appointment of a single impartial arbitrator[2] and MITA, on behalf of Plaintiff, participated in the arbitrator selection process. Thereafter progress within the CBA's grievance-arbitration procedure ceased.

On August 9, 2017, Plaintiff filed the present complaint against Local 324 seeking a declaratory judgment that Grievance No. 1362 is not arbitrable within the CBA. (Dkt. 1.) Local 324 responded and filed a counterclaim against Plaintiff for declaratory and injunctive relief to force Plaintiff to return to the grievance-arbitration procedure. (Dkt. 3.) Local 324 also filed a Third-Party Complaint against MITA. Plaintiff and Local 324, have now filed cross summary judgment complaints.

---

[2]The American Arbitration Association assigned the matter Case No. 01-17-0003-8753.

## II. Summary Judgment

### A. Legal Standard

Through their present motions, both parties seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under that rule, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). "A mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

### B. Analysis

At issue is whether the grievance between Local 324 and Plaintiff is arbitrable under the Agreement. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986). Subsidiary questions "which grow out of the dispute and bear on its final disposition," are ones that must be left to the arbitrator. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). The Court must therefore determine only the gateway question of whether, given the nature of the grievance between the parties, the issue is one the CBA reserves for arbitration or whether it falls within one of the CBA's exceptions.

In making this determination, the CBA is read in light of the fact federal labor law and national labor policy strongly favors arbitration as the means of settling contractual labor disputes and under rules of construction favoring arbitration. "Where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, [and] resolve any doubts in favor of arbitration." *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128 (6th Cir. 1994); *See AT&T Techs.*, 475 U.S. at 648-51. The presumption favoring arbitration can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation*, 363 U.S. at 582-83.

In the instant case, the scope of the CBA grievance-arbitration process is broad. It states "[a]ll differences and disputes as to the proper meaning or application of the terms" and "any claimed violation thereof, shall be settled in accordance with the procedure herein provided" save the two narrow clauses which list explicit exclusions. (Article X, Dkt. 1-2, at 20; PgID 27.) The Sixth Circuit has found similar arbitration clauses to also be broad. *See Mead Corp.*, 21 F.3d at 132 (collecting cases finding broad arbitration clauses). The Sixth Circuit holds that the presumption of arbitrability is particularly applicable where the arbitration clause provides for arbitration of any controversy involving the interpretation of the agreement. *Comm'ns Workers v. Mich. Bell Tel. Co.*, 820 F.2d 189, 193 (6th Cir. 1987). The use of words like "any" and "all" and the fact that the arbitration procedure covers both interpretation and application of the CBA, suggest the arbitration clause is a broad one and triggers the presumption in favor of arbitrability as "particularly applicable." *AT&T Techs*, 475 U.S. at 650.

Since the presumption favoring arbitration is particularly applicable, only grievances which the CBA expressly and specifically excludes will avoid arbitration. Two clauses exist in the CBA, Article X(1) and Article X(13), which exclude disputes from arbitration. Article X(13), excludes from arbitration disputes "over failure or refusal of a **Contractor** to pay the wage rates, overtime, vacation and holiday, supplemental vacation, health care, pension, retiree benefit, labor management education committee, or apprenticeship fund payments provided for in this Agreement. . . ." (emphasis added)(Article X(13), Dkt. 1-2, at 21). Article X(1) similarly excludes from arbitration "the violation of payments of rates of pay, overtime work, vacation and holiday, health care, pension, retiree benefit, labor management education committee, or apprenticeship fund contributions, as provided in this

6

Agreement. . . ." (Article X(1), Dkt. 1-2, at 20). Both parties summarize these two articles, Article X(1)[3] and/or Article X(13)[4], as explicitly excluding from arbitration "disputes over the failure or refusal to pay fringe benefit contributions." (Dkt. 13, at 9; PgID 199.)

Plaintiff claims that Grievance No. 1362 is "a grievance seeking fringe benefits payments" and therefore falls within the agreed to exclusions. (Dkt. 13, at 16; PgID 206.) In support of this conclusion, Plaintiff cites to a related grievance Local 324 filed against another Contractor.[5] In this earlier grievance, which raises the same subcontracting issue, Local 324 used different phraseology to describe the remedy. The remedy sought there stated, "immediately cease and desist subcontracting in violation of Article IX. Make *fringe benefit funds* fully whole for lost *contributions*, including interest, costs, *liquidated*

---

[3]The relevant part of Article X(1) of the CBA which limits the scope of the grievance-arbitration process states: "Except as herein otherwise provided the violation of payment of rates of pay, overtime work, vacation and holiday, health care, pension, retiree benefit, labor management eduction committee, or apprenticeship fund contributions, as provided in this Agreement, shall not be considered as subject to arbitration, and the Union may take economic action against the Contractor for violation of such payments, provided it gives seventy-two (72) hours written or electronic notice to the Association and the Contractor concerned prior to taking such economic action. The Joint Arbitration Board shall have no power to modify, change, amend or abrogate this Agreement in any way.

[4]Article X(13) of the CBA states in its entirety: It is mutually agreed that the provisions of this Article shall not apply if the dispute arises over failure or refusal of a Contractor to pay the wage rates, overtime, vacation and holiday, supplemental vacation, health care, pension, retiree benefit labor management education committee, or apprenticeship fund payments provided for in this Agreement; provided, however, that any dispute concerning an employee's proper wage rate, classification or eligibility for any of the payments herein provided for shall be subject to arbitration.

[5]Plaintiff's reference to Grievance No. 1138 with C&D Hughes Inc. (a non-party to this matter) is never fully explained. There are grievances Local 324 filed against the other Plaintiffs which contain the same language as this grievance. Since Plaintiff's argument is ultimately unsuccessful even considering this language the Court presumes without deciding the connection is legitimate.

*damages*." (Dkt. 1-3, at 2; PgID 33)(emphasis added).  Referring to this benefits type language, Plaintiff claims "[a]ccording to the Grievance, there is a dispute over the failure or refusal of a Contractor, [Plaintiff], to pay the fringe benefits." (Dkt. 13, at 18; PgID 208.) Plaintiff contends in oral arguments, if subcontractors do not make these contributions, then according to this requested remedy, the Contractor must make the fringe benefit payments in their stead.  In substance therefore, Plaintiff asserts the nature of Article IX-Subcontracting clause is fringe benefit contributions and falls within the CBA's exceptions to arbitration.

Plaintiff cites *William R. Nash, Inc. v. Local Union No. 719*, from the southern district court of Florida in support of this substance over form, interpretation of grievances.  653 F.Supp. 1016 (S.D.Fla. 1985).  In *Nash*, the union filed a grievance which alleged Nash breached their pre-hire agreement "by using persons not referred from the Local 719 hiring and referral system to perform plumbing work and by not paying the agreement's wage rates."  Although the central issue of the case turned on the validity of the entire agreement, the Court took notice that the grievance did not appear to be arbitrable.  "Article XI of the agreement, which provides for arbitration of grievances by the Joint Board, expressly provides that grievances 'other than those involving hiring, or the payment or non-payment of wages or fringe benefits,' may be submitted to the Joint Board.  Thus, the grievance urged by the union was not arbitrable by the Board for lack of jurisdiction."  *Nash*, 653 F.Supp. at 1024.  The Florida court goes into no more detail than this and does not reach the nuisanced conclusion Plaintiff hopes.  The express language of the grievance referenced a hiring dispute and the grievance-arbitration procedure specifically excluded disputes "involving hiring."  The Florida court's conclusion therefore was in line with the

express terms of both grievance and arbitration language and did not need to go to the deeper substance of either as Plaintiff suggests.

Plaintiff's substance over form argument also neglects the applicable standard the Court must use in its determination of arbitrability. "[O]nly an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Mead Corp.*, 21 F.3d at 131(quoting *Warrior & Gulf Navigation*, 363 U.S. at 584-85). Local 324's grievance on its face disputes Plaintiff's contracting failure, to hire American Pavement, the subcontractor, within the contracting terms of Article IX-Subcontracting. "The Employer is in violation of Article IX of the MITA Road Agreement, 'Subcontracting'. " (Grievance Report 1362, Dkt. 1-4, at 2.) The first remedy requested is "immediately cease and desist subcontracting in violation of Article IX". *Id.* Both statements focus not on fringe benefit payments but contracting failures. Contracting and hiring disputes are not expressly within the arbitration exceptions. Nor is a failure to subcontract as the CBA requires excluded.

Local 324 cites an equally non-binding case from the Seventh Circuit as persuasive of their conclusion that the remedy sought should not determine the substance of the dispute. In *International Union of Operating Engineers, Local 103, v. Indiana Construction Corp.*, a union brought suit against a general contractor to compel arbitration. 910 F.2d 450 (7th Cir. 1990) Under the collectively bargained agreement the general contractor agreed not to subcontract unless the subcontractor paid at least the minimum rates under the agreement. The collectively bargained agreement provided that a dispute regarding subcontracting would be arbitrable, but a dispute about jurisdiction would not. The union asserted it did not claim the subcontracted job for its own workers only that the

subcontractor not pay its employees less than the wages paid to the union workers. The union requested as a remedy, compensation to their union for the work the subcontracted workers performed. The court summarized, "[o]ur inquiry then is whether, at the summary judgment stage, a request for damages in the form of contribution to the union's fringe benefit fund requires that the union's claim be characterized as a jurisdictional dispute (and thus outside of the arbitration clause.)" *Id.* at 453. The Seventh Circuit held the district court incorrectly relied only on the requested damages to determine the arbitrability of the grievance and instead needed to examine the question of whether the union claimed the job for itself. The primary reference in determining the arbitrability must be the express terms of the contract. In the end an arbitrator has wide latitude in determining an appropriate remedy, including whether back pay damages are appropriate. "The district court could not conclude that the dispute was jurisdictional - and therefore not subject to arbitration under the terms of the collective bargaining agreement - solely because the union demanded a contribution to its pension fund as compensation for the alleged breach. Such a remedy. . . .would have been permissible for a breach of the subcontracting clause." *Id.* at 455. Similarly, this Court examines Local 324's claimed violation and does not let the damages sought determine the arbitrability of Plaintiff's alleged breach of subcontracting clause (Article IX) grievance.

Here, the presumption in favor of arbitrability is broad and particularly applicable. *AT&T Techs*, 475 U.S. at 650. Plaintiff, arguing against arbitrability, can overcome this presumption only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* Grievance No. 1362 is susceptible to an interpretation

that it falls within the scope of the grievance-arbitration process and doubts should be resolved in favor of coverage. Grievance No. 1362 is on its face a complaint regarding Plaintiff's failure to subcontract in accordance with Article IX - Subcontracting. Neither of the two express exclusion in the CBA apply to subcontracting, contracting or hiring failures. The Supreme Court states the courts "have no business weighing the merits of the grievance." *AT&T Techs.*, 475 U.S. at 650. The arbitrator will decide whether Plaintiff violated the Article IX Subcontracting provision of the CBA and the appropriate remedy if such a violation occurred. If the arbitrator ultimately agrees Plaintiff violated the CBA Article IX-Subcontracting, the arbitrator may determine an appropriate remedy for this alleged breach, which may or may not include a calculation of the fringe benefits Local 324 would have received had the subcontracting occurred according to the CBA. Plaintiff's summary judgment motion is dismissed and Local 324's summary judgment motion is granted.

## II. Motion to Dismiss

MITA brings this motion to dismiss (Dkt. 9) pursuant to Fed. R. Civ. P. 12(b)(6) alleging the claims Local 324 asserts in its Third-Party Complaint against MITA fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The parties have subsequently voluntarily dismiss MITA from this matter. Therefore this motion is now moot.

## III. Conclusion

For the reasons thus stated, the Court DENIES Plaintiff's Motion for Summary Judgment. It is further ordered that Local 324's Motion for Summary Judgment is GRANTED and Plaintiff's complaint is DISMISSED in favor of the parties pursuing their

grievance though arbitration pursuant to the terms of the parties' grievance-arbitration procedure as provided for in the CBA.

It is hereby order that Third-Party Defendant, MITA's, Motion to Dismiss is now moot.

IT IS SO ORDERED.

                                       s/Nancy G. Edmunds
                                       Nancy G. Edmunds
                                       United States District Judge

Dated: December 8, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 8, 2017, by electronic and/or ordinary mail.

                                       s/ Lisa C. Bartlett
                                       Case Manager